## TOWN OF FAIRFAX v. TOWN OF WESTFORD.

JANUARY TERM, 1895.

*Pauper.   No derivative residence.*

In order to charge a town with the support of a pauper under No. 55, Acts of 1892, it must be shown that the pauper has a residence in the defendant town in his own right.   There is no such thing as a derivative residence.

Assumpsit for the support of a pauper.   Heard upon an agreed statement of facts at the April term, 1894, Franklin county, TAFT, J., presiding.   Judgment for the defendant. The plaintiff excepts.

*Watson & Flinn* for the plaintiff.

The pauper's residence in his father's family was his residence.   Acts of 1892, No. 55; *Wells* v. *West Haven*, 5 Vt. 322 ; *Morristown* v. *Fairfield*, 46 Vt. 33 ; *Anderson* v. *Anderson*, 42 Vt. 350; *Marshfield* v. *Tunbridge*, 62 Vt. 455.

He received no aid from any town, and therefore supported himself.   *Craftsbury* v. *Greensboro*, 66 Vt. 585.

*D. J. Foster* for the defendant.

It has been once decided that there can be no derivative residence.   *Marshfield* v. *Tunbridge*, 62 Vt. 455.

START, J.   It appears from the agreed statement of

facts that Joseph Rousseau, the pauper in question, was born in the plaintiff town in 1869, where his father then lived and had his home. In 1873 the father moved from the plaintiff town to the defendant town with his family, including said Joseph, and lived there until 1881, when he and his family went to Massachusetts. In 1883 the whole family returned to the defendant town, and continued to live there until 1888 when the father again went to Massachusetts, leaving his son Felos, a young man about twenty-four years of age, in charge of the property and family, including said Joseph. The father went to Massachusetts for a temporary purpose, intending to return, but died while there in June, 1888. After the father's death Felos, as head of the family, continued to live in the defendant town in charge of the property and family, including said Joseph, until May 24, 1890, when the family, including Joseph, moved to the plaintiff town, where they have since lived and had their home. Owing to the mental and physical condition of Joseph, he has ever been and still is incompetent and incapable of taking care of himself, or of exercising any choice or intention as to residence. While the father was alive and up to the time of his death, Joseph was supported by him; and since his death, Joseph has continued to live in and been supported by the family until he came to want, May 6, 1893, in the plaintiff town.

From this statement it is clear that Joseph never resided in the defendant town for three years supporting himself, within the meaning of No. 55, of the Acts of 1892. This act provides that if a person is poor and in need of assistance for himself or family, it shall be the duty of the overseer of the poor of any town, when application for such assistance is made, to relieve such person or his family; and if such person has not resided in such town for three years, supporting himself and family, and is not of sufficient ability to provide such support, the town so furnishing assistance may

recover the expense of the same from the town where such person last resided for the space of three years, supporting himself and family.

If the father had continued to live, and Joseph had continued unemancipated and a member of the father's family, and the father had been poor and in need of assistance for Joseph as a member of his family, and the plaintiff had furnished the assistance, it could probably recover the expense incurred in furnishing such assistance of the town where the father last resided for three years, supporting himself and family. In that case the father would have been the poor person in need of assistance for a member of his family. The assistance would be furnished to the family of a poor person in need. But the father is not a poor person in need of assistance for himself or his family; he is dead. Joseph is the poor person in need of assistance for himself. It is not shown that he is a member of the family of a poor person in need of assistance for himself or his family. There is no head of a family through whom the defendant can be made chargeable for Joseph's support. The assistance was furnished directly to Joseph, and not through the family of a poor person in need of assistance for himself or his family. He must be regarded as disconnected from any family, and as a poor person in need of assistance for himself.

In order to maintain an action under this act, the plaintiff must show that the poor person to whom, or to whose family, assistance has been furnished, last resided in the defendant town for three years, supporting himself and family. In this case, the father of Joseph being being dead, the assistance was not furnished to a member of the family of a poor person in need of assistance for himself or his family, but was furnished to a poor person in need of assistance for himself. The plaintiff was called upon to show that Joseph last resided in the defendant town for three years, supporting himself. This it has not done. Joseph has never resided

in any town, supporting himself. He does not take his father's residence. To maintain an action under the act, it must appear that the poor person to whom, or to whose family, assistance has been furnished, has a residence in the defendant town in his own right. The act does not provide for a derivative residence. In this respect the act is not unlike the act of 1886. That act was construed in *Marshfield v. Tunbridge*, 62 Vt. 455, and it was there held that an unemancipated minor, while he lives with and is maintained wholly or in part by his parents, does not reside or maintain himself within the meaning of the act.

*Judgment affirmed.*